## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

MORGAN ART FOUNDATION LIMITED, SIMON
SALAMA-CARO, SHEARBROOK (US), LLC,
FIGURE 5 ART LLC, AND RI CATALOGUE
RAISONNÉ LLC,

          Plaintiffs,

    -against-

JAMES W. BRANNAN AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF ROBERT
INDIANA,

          Defendant.

Case No.: 1:18-cv-8231 (AT)

JAMES W. BRANNAN AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF ROBERT
INDIANA,

          Counter-Claimant,

    -against-

MORGAN ART FOUNDATION LIMITED, SIMON
SALAMA-CARO, SHEARBROOK (US), LLC,
FIGURE 5 ART LLC, AND RI CATALOGUE
RAISONNÉ LLC,

          Counterclaim-Defendants.

### [PROPOSED] AMENDED ANSWER, DEFENSES AND COUNTERCLAIMS OF DEFENDANT JAMES W. BRANNAN AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ROBERT INDIANA TO PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendant James W. Brannan as Personal Representative of the Estate of Robert Indiana

(the "Estate"), by and through undersigned counsel, respectfully submits this Amended Answer,

Defenses and Counterclaims in response to the First Amended Complaint of Plaintiffs Morgan

Art Foundation Limited, Simon Salama-Caro, Shearbrook (US), LLC, Figure 5 Art LLC, and RI Catalogue Raisonné LLC (the "FAC," ECF No. 14).

## NATURE OF THE ACTION

1.    The Estate admits that Robert Indiana was and remains an iconic American artist, who gained fame for his *LOVE* image and whose contributions to the American canon go beyond *LOVE*.  The Estate otherwise denies the allegations in Paragraph 1.

2.    The Estate denies the allegations in Paragraph 2.

3.    The Estate admits that Indiana granted Morgan rights to produce and sell certain works pursuant to written agreements memorializing such rights, and that Morgan has paid Indiana royalties from certain sales of such works.  Except as so admitted, the Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3.

4.    The Estate admits that shortly before Indiana's death in May 2018, Morgan brought an action in the District Court for the Southern District of New York (the "AIA Litigation").  Except as so admitted, the Estate denies the allegations in Paragraph 4.

5.    The Estate denies the allegations in Paragraph 5.

6.    The Estate denies the allegations in Paragraph 6.

7.    The Estate denies the allegations in Paragraph 7.

8.    The Estate denies the allegations in Paragraph 8.

9.    The Estate denies the allegations in Paragraph 9.

10.    The Estate denies the allegations in Paragraph 10.

11.    The Estate denies the allegations in Paragraph 11.

12.    The Estate denies the allegations in Paragraph 12.

## PARTIES

13.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13.

14.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14.

15.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15.

16.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16.

17.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17.

18.     The Estate admits the allegations in Paragraph 18.

## JURISDICTION AND VENUE

19.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19.

20.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20.

21.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21.

22.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22.

23.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23.

24.     The Estate neither admits nor denies the allegations in Paragraph 24 because they state legal conclusions to which no response is required.

25.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25.

26.     The Estate neither admits nor denies the allegations in Paragraph 26 because they state legal conclusions to which no response is required.

27.     The Estate neither admits nor denies the allegations in Paragraph 27 because they state legal conclusions to which no response is required.

28.     The Estate neither admits nor denies the allegations in Paragraph 28 because they state legal conclusions to which no response is required.

29.     The Estate neither admits nor denies the allegations in Paragraph 29 because they state legal conclusions to which no response is required.

## FACTUAL ALLEGATIONS

30.     The Estate admits that Robert Indiana, born Robert Earl Clark, was an American artist born on September 13, 1928 in New Castle, Indiana.  The Estate admits that Indiana created the image called *LOVE* that was featured on the annual Christmas Card published by the Museum of Modern Art in 1965.  Except as so stated, the Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30.

31.     The Estate admits the allegations in Paragraph 31, except denies knowledge or information sufficient to form a belief as to the truth of how many *LOVE* stamps the U.S. Postal Service printed.

32.     The Estate admits that "[p]eople" have used the *LOVE* image without Indiana's consent and that, in 1978, Indiana moved to Vinalhaven, Maine.  The Estate denies knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 32.

33.     The Estate admits that Simon Salama-Caro has represented Indiana.  The Estate denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 33.

34.     With respect to Paragraph 34, the Estate admits that on April 9, 1999, Indiana entered into an agreement with Morgan Consolidated Ltd., now known as Morgan Art Foundation Limited, and refers to the text of the agreement for its content.

35.     With respect to the allegations in Paragraph 35, the Estate refers to the April 9, 1999 agreement for its content.

36.     With respect to the allegations in Paragraph 36, the Estate refers to the April 9, 1999 agreement for its content.

37.     With respect to the allegations in Paragraph 37, the Estate refers to the purported "Signature Agreement" for its content.

38.     The Estate denies the allegations in Paragraph 38.

39.     The Estate admits that on December 22, 1999, Indiana entered into an agreement with Morgan Consolidated Ltd., now known as Morgan Art Foundation Limited, and refers to the text of that agreement for its content.

40.     The Estate admits that on December 22, 1999, Indiana entered into an agreement with Morgan Consolidated Ltd., now known as Morgan Art Foundation Limited, and refers to the text of that agreement for its content.

41.     The Estate admits that on December 22, 1999, Indiana entered into an agreement with Morgan Consolidated Ltd., now known as Morgan Art Foundation Limited, and refers to the text of that agreement for its content.

42.     The Estate admits that on December 22, 1999, Indiana entered into an agreement with Morgan Consolidated Ltd., now known as Morgan Art Foundation Limited, and refers to the text of that agreement for its content.

43.     With respect to the allegations in Paragraph 43, the Estate refers to the Bills of Sale dated December 22, 1999 for their content.

44.     With respect to the allegations in Paragraph 44, the Estate refers to the July 12, 2001 writing for its content.

45.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45.

46.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46.

47.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47.

48.     The Estate admits that Indiana entered into certain written agreements with Salama-Caro to create marble *LOVE* sculptures within certain defined parameters and conditions, and refers to such agreements for their content.  Except as so admitted, the Estate denies the allegations in Paragraph 48.

49.     With respect to the allegations in Paragraph 49, the Estate refers to the September 15, 2000 writing for its content.

50.     With respect to the allegations in Paragraph 50, the Estate refers to the April 26, 2001 writing for its content.

51.     With respect to the allegations in Paragraph 51, the Estate refers to the August 6, 2003 writing for its content.

52.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52.

53.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53.

54.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54.

55.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55.

56.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56.

57.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57.

58.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58.

59.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59.

60.     With respect to the allegations in Paragraph 60, the Estate refers to the domain name registration for its content.   Except as so stated, the Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60.

61.     The Estate denies that Salama-Caro has any right to maintain any website using the domain name "robertindiana.com" and otherwise denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 61.

62.     The Estate denies that Salama-Caro, Shearbrook (US), LLC, and Figure 5 Art LLC have any right to maintain any website using the domain name "robertindiana.com" and otherwise denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 62.

63.     The Estate denies that Salama-Caro and his affiliates have any right to maintain any website using the domain name "robertindiana.com."  The Estate denies that Salama-Caro and his affiliates operated the website with "Indiana's full knowledge and approval."  The Estate otherwise denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 63.

64.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 64.

65.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 65.

66.     With respect to the allegations in Paragraph 66, the Estate refers to the communication dated August 2003 for its content.

67.     With respect to the allegations in Paragraph 67, the Estate refers to the communication dated December 2006 for its content.

68.     With respect to the allegations in Paragraph 68, the Estate refers to the communication dated August 2003 for its content.  The Estate otherwise denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 68.

69.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69.

70.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70.

71.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 71.

72.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 72.

73.     The Estate admits that Robert Indiana passed away on May 19, 2018.

74.     The Estate admits the allegations in Paragraph 74.

75.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75.

76.     The Estate admits the allegations in Paragraph 76.

77.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77.

78.     The Estate admits that, on September 7, 2018, the Estate filed an Answer to the First Amended Complaint of Morgan Art Foundation Limited and Counterclaims in the AIA Litigation ("Estate Counterclaims"), and affirmatively states that, on September 20, 2018, the Estate filed an Amended Answer and Counterclaims to the First Amended Complaint of Morgan Art Foundation Limited.  The Estate denies that its Counterclaims include allegations that the Estate knows to be untrue.

79.     With respect to the allegations in Paragraph 79, the Estate refers to the Estate Counterclaims for its content and otherwise denies the allegations in Paragraph 79.

80.     With respect to the allegations in Paragraph 80, the Estate refers to the Estate Counterclaims for its content and otherwise denies the allegations in Paragraph 80.

81.     With respect to the allegations in Paragraph 81, the Estate refers to the Estate Counterclaims for its content and otherwise denies the allegations in Paragraph 81.

82.     With respect to the allegations in Paragraph 82, the Estate refers to the communication dated August 30, 2018 for its content.

83.     The Estate denies the allegations in Paragraph 83.

84.     The Estate denies the allegations in Paragraph 84.

85.     The Estate denies the allegations in Paragraph 85.

86.     The Estate denies the allegations in Paragraph 86.

87.     The Estate denies the allegations in Paragraph 87.

88.     The Estate denies the allegations in Paragraph 88.

**COUNT I**
**Breach of Contract**
**By Morgan Art Foundation Limited and Simon Salama-Caro Against the Estate**

89.     The Estate repeats and realleges each and every answer to the allegations contained in Paragraphs 1 through 88 as if fully set forth here.

90.     The Estate neither admits nor denies the allegations in Paragraph 90, as they state a legal conclusion to which no response is required.

91.     The Estate neither admits nor denies the allegations in Paragraph 91, as they state a legal conclusion to which no response is required.

92.     The Estate denies the allegations in Paragraph 92.

93.     The Estate denies the allegations in Paragraph 93.

94.     The Estate denies the allegations in Paragraph 94.

95.     The Estate denies the allegations in Paragraph 95.

96.     The Estate denies the allegations in Paragraph 96.

## COUNT II
## Unjust Enrichment
### By Morgan Art Foundation Limited and Simon Salama-Caro Against the Estate

97.     The Estate repeats and realleges each and every answer to the allegations contained in Paragraphs 1 through 96 as if fully set forth here.

98.     The Estate neither admits nor denies the allegations in Paragraph 98, as they state legal conclusions to which no response is required.

99.     The Estate neither admits nor denies the allegations in Paragraph 99, as they state legal conclusions to which no response is required.

100.    The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 100.

101.    The Estate neither admits nor denies the allegations in Paragraph 101, as they state legal conclusions to which no response is required.

102.    The Estate denies the allegations in Paragraph 102.

103.    The Estate denies the allegations in Paragraph 103.

104.    The Estate denies the allegations in Paragraph 104.

## COUNT III
## Promissory Estoppel
### By Morgan Art Foundation Limited and Simon Salama-Caro Against the Estate

105.    The Estate repeats and realleges each and every answer to the allegations contained in Paragraphs 1 through 104 as if fully set forth here.

106.    The Estate neither admits nor denies the allegations in Paragraph 106, as they state legal conclusions to which no response is required.

107.    The Estate neither admits nor denies the allegations in Paragraph 107, as they state legal conclusions to which no response is required.

108.    The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 108.

109.    The Estate denies the allegations in Paragraph 109.

110.    The Estate denies the allegations in Paragraph 110.

111.    The Estate denies the allegations in Paragraph 111.

112.    The Estate denies the allegations in Paragraph 112.

113.    The Estate denies the allegations in Paragraph 113.

**COUNT IV**
**Declaratory Judgment**
**By Morgan Art Foundation Limited and Simon Salama-Caro Against the Estate**

114.    The Estate repeats and realleges each and every answer to the allegations contained in Paragraphs 1 through 113 as if fully set forth here.

115.    The Estate denies the allegations in Paragraph 115.

116.    The Estate neither admits nor denies the allegations in Paragraph 116, as they state legal conclusions to which no response is required.

117.    The Estate neither admits nor denies the allegations in Paragraph 117, as they state legal conclusions to which no response is required.

118.    The Estate neither admits nor denies the allegations in Paragraph 118, as they state legal conclusions to which no response is required.

119.    The Estate denies the allegations in Paragraph 119.

120.    The Estate denies the allegations in Paragraph 120.

**COUNT V**
**Breach of Contract**
**By Simon Salama-Caro and RI Catalogue Raisonne LLC Against the Estate**

121.    The Estate repeats and realleges each and every answer to the allegations contained in Paragraphs 1 through 120 as if fully set forth here.

122.     The Estate neither admits nor denies the allegations in Paragraph 122, as it states legal conclusions to which no response is required.

123.     The Estate denies the allegations in Paragraph 123.

124.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 124.

125.     The Estate neither admits nor denies the allegations in Paragraph 125, as they state legal conclusions to which no response is required.

126.     The Estate denies the allegations in Paragraph 126.

127.     With respect to the allegations in Paragraph 127, the Estate refers to the cease and desist instruction for its contents.

128.     The Estate denies the allegations in Paragraph 128.

129.     The Estate denies the allegations in Paragraph 129.

**COUNT VI**
**<u>Unjust Enrichment</u>**
**By Simon Salama-Caro and RI Catalogue Raisonne LLC Against the Estate**

130.     The Estate repeats and realleges each and every answer to the allegations contained in Paragraphs 1 through 129 as if fully set forth here.

131.     The Estate neither admits nor denies the allegations in Paragraph 131, as it states legal conclusions to which no response is required.

132.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 132.

133.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 133.

134.     The Estate neither admits nor denies the allegations in Paragraph 134, as it states legal conclusions to which no response is required.

135.    The Estate denies the allegations in Paragraph 135.

136.    With respect to the allegations in Paragraph 136, the Estate refers to the cease and desist instruction for its contents.

137.    The Estate denies the allegations in Paragraph 137.

138.    The Estate denies the allegations in Paragraph 138.

**COUNT VII**
**<u>Promissory Estoppel</u>**
**By Simon Salama-Caro and RI Catalogue Raisonne LLC Against the Estate**

139.    The Estate repeats and realleges each and every answer to the allegations contained in Paragraphs 1 through 138 as if fully set forth here.

140.    With respect to the allegations in Paragraph 140, the Estate refers to the communication dated December 2006 for its content.

141.    The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 141.

142.    The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 142.

143.    The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 143.

144.    The Estate denies the allegations in Paragraph 144.

145.    With respect to the allegations in Paragraph 145, the Estate refers to the cease and desist instruction for its contents.

146.    The Estate denies the allegations in Paragraph 146.

147.    The Estate denies the allegations in Paragraph 147.

148.    The Estate denies the allegations in Paragraph 148.

149.    The Estate denies the allegations in Paragraph 149.

## COUNT VIII
## Declaratory Judgment
**By Simon Salama-Caro and RI Catalogue Raisonne LLC Against the Estate**

150.     The Estate repeats and realleges each and every answer to the allegations contained in Paragraphs 1 through 149 as if fully set forth here.

151.     The Estate denies the allegations in Paragraph 151.

152.     The Estate neither admits nor denies the allegations in Paragraph 152, as they state legal conclusions to which no response is required.

153.     The Estate neither admits nor denies the allegations in Paragraph 153, as they state legal conclusions to which no response is required.

154.     The Estate neither admits nor denies the allegations in Paragraph 154, as they state legal conclusions to which no response is required.

155.     The Estate denies the allegations in Paragraph 155.

156.     The Estate denies the allegations in Paragraph 156.

## COUNT IX
## Breach of Contract
**By Simon Salama-Caro, Shearbrook (US), LLC, and Figure 5 Art LLC Against the Estate**

157.     The Estate repeats and realleges each and every answer to the allegations contained in Paragraphs 1 through 156 as if fully set forth here.

158.     The Estate denies the allegations in Paragraph 158.

159.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 159.

160.     The Estate denies the allegations in Paragraph 160.

161.     The Estate denies the allegations in Paragraph 161.

162.     The Estate denies the allegations in Paragraph 162.

163.     The Estate denies the allegations in Paragraph 163.

**COUNT X**
**Unjust Enrichment**
**By Simon Salama-Caro, Shearbrook (US), LLC, and Figure 5 Art LLC Against the Estate**

164.     The Estate repeats and realleges each and every answer to the allegations contained in Paragraphs 1 through 163 as if fully set forth here.

165.     The Estate denies the allegations in Paragraph 165.

166.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 166.

167.     The Estate denies the allegations in Paragraph 167.

168.     The Estate denies the allegations in Paragraph 168.

169.     The Estate denies the allegations in Paragraph 169.

170.     The Estate denies the allegations in Paragraph 170.

**COUNT XI**
**Promissory Estoppel**
**By Simon Salama-Caro, Shearbrook (US), LLC, and Figure 5 Art LLC Against the Estate**

171.     The Estate repeats and realleges each and every answer to the allegations contained in Paragraphs 1 through 170 as if fully set forth here.

172.     The Estate denies the allegations in Paragraph 172.

173.     The Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 173.

174.     The Estate denies the allegations in Paragraph 174.

175.     The Estate denies the allegations in Paragraph 175.

176.     The Estate denies the allegations in Paragraph 176.

177.     The Estate denies the allegations in Paragraph 177.

178.     The Estate denies the allegations in Paragraph 178.

179.     The Estate denies the allegations in Paragraph 179.

## COUNT XII
## Declaratory Judgment
## By Simon Salama-Caro, Shearbrook (US), LLC, and Figure 5 Art LLC Against the Estate

180.   The Estate repeats and realleges each and every answer to the allegations contained in Paragraphs 1 through 179 as if fully set forth here.

181.   The Estate denies the allegations in Paragraph 181.

182.   Estate denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 182.

183.   The Estate denies the allegations in Paragraph 183.

184.   The Estate denies the allegations in Paragraph 184.

185.   The Estate neither admits nor denies the allegations in Paragraph 185, as they state legal conclusions to which no response is required.

186.   The Estate neither admits nor denies the allegations in Paragraph 186, as they state legal conclusions to which no response is required.

187.   The Estate neither admits nor denies the allegations in Paragraph 187, as they state legal conclusions to which no response is required.

188.   The Estate denies the allegations in Paragraph 188.

189.   The Estate denies the allegations in Paragraph 189.

## DEFENSES AND AFFIRMATIVE DEFENSES

### FIRST DEFENSE

190.   Plaintiffs' claims are barred, in whole or in part, because they fail to state a claim upon which relief can be granted.

### SECOND DEFENSE

191.   Plaintiffs' claims are barred, in whole or in part, for lack of standing.

## THIRD DEFENSE

192.    Plaintiffs' claims are barred, in whole or in part, for lack of subject matter jurisdiction.

## FOURTH DEFENSE

193.    Plaintiffs' claims are barred, in whole or in part, by the relevant statutes of limitations.

## FIFTH DEFENSE

194.    Plaintiffs' claims are barred, in whole or in part, because the copyrights Morgan alleges to own are invalid.

## SIXTH DEFENSE

195.    Plaintiffs' claims are barred, in whole or in part, because Morgan is bound to arbitrate any such claims.

## SEVENTH DEFENSE

196.    Plaintiffs' claims are barred, in whole or in part, under the doctrine of copyright misuse because Morgan exploited Indiana's works without adequately compensating Indiana.

## EIGHTH DEFENSE

197.    Plaintiffs' claims are barred, in whole or in part, because Morgan failed to comply with its contractual obligations to Robert Indiana.

## NINTH DEFENSE

198.    Plaintiffs' claims are barred, in whole or in part, because Morgan suffered no damages.

**TENTH DEFENSE**

199.   Plaintiffs' claims are barred, in whole or in part, because Morgan failed to mitigate damages.

**ELEVENTH DEFENSE**

200.   Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands.

**TWELFTH DEFENSE**

201.   Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

**THIRTEENTH DEFENSE**

202.   Plaintiffs' claims are barred, in whole or in part, by the doctrine of equitable estoppel.

## COUNTERCLAIMS OF THE ESTATE

The Estate, by and through its attorneys, brings the following Counterclaims against Morgan Art Foundation Limited ("Morgan"), Simon Salama-Caro ("Salama-Caro"), Shearbrook (US), LLC ("Shearbrook"), RI Catalogue Raisonné LLC ("RI Catalogue Raisonné") and Figure 5 Art LLC ("Figure 5") (collectively, the "Counterclaim Defendants"), and states as follows:

## NATURE OF THE ACTION

203.   These Counterclaims seek declaratory and injunctive relief concerning the agreements that Counterclaim Defendants had with Indiana during his lifetime, which have now terminated.  These Counterclaims also seek redress for decades of Salama-Caro's breaches of fiduciary duty to Indiana, aided and abetted by the other Counterclaim Defendants.  The allegations are based on information now available to the Estate, including information in the pleadings and discovery in this action and the related lawsuit filed by Morgan.

204. Counterclaim Defendants Morgan and Salama-Caro portray themselves as champions of the artist Robert Indiana, who cared about his personal welfare and dedicated themselves to promoting his legacy and building a market for his works. Nothing could be further from the truth. In fact, for decades, Morgan and Salama-Caro systematically took advantage of Indiana, maximizing their own profits at his expense.

205. In the mid-1990s, Salama-Caro approached Indiana and offered to act as his agent. At the time, Indiana was in his mid-60s, living in seclusion. Salama-Caro manipulated Indiana into signing a number of unconscionably lopsided agreements, without the benefit of counsel's advice.

206. Morgan and Salama-Caro claim that, under these agreements, Indiana transferred all of his rights in his works (including the iconic LOVE image, one of Indiana's most important designs) to Morgan, for no consideration. As a result of these agreements, Morgan claims it has the perpetual and exclusive right to reproduce, promote and sell Indiana's works, in such manner, at such time, for such price and subject to such terms and conditions as Morgan chooses in its sole discretion. The only compensation to Indiana under these agreements was to be a percentage of the monies Morgan received from the sale of the works to third parties—indeed, in many instances it was only a percentage of Morgan's "net income" from such sales, after the deduction of a long list of expenses. Morgan and Salama-Caro each reaped substantial profits from selling Indiana's works under this arrangement, with only a small fraction going to Indiana.

207. Morgan and Salama-Caro kept Indiana in the dark about the extent of their profiteering. Morgan was supposed to provide Indiana with periodic accountings detailing each sale and itemizing the revenue, expenses, and amount paid to Indiana. None of this information was given to Indiana, however. Morgan was also supposed to pay Indiana his percentage within

30 days of each sale, yet never did.  Instead, once a year, Morgan sent Indiana a check accompanied by a single-line statement of a dollar amount that was "payable to Robert Indiana"—without any explanation as to how the amount was calculated, what works Morgan had sold, to whom, at what price, and what expenses had been deducted.  Morgan has not sent any payments to Indiana or the Estate since December 2017, and yet has continued to reproduce, promote and sell Indiana's works.

208.   In addition, Morgan and Salama-Caro produced works in Indiana's name that were not authorized under their agreements with Indiana, and were not otherwise created or approved by Indiana.  As one example, Indiana had authorized Morgan to produce sculptures of Indiana's "LOVE" image using certain pre-approved kinds of marble.   Ignoring these requirements, Morgan created and sold "LOVE" sculptures made from other materials, such as travertine, granite, and malachite.

209.   Salama-Caro habitually abused his position of trust with Indiana to engage in disloyal self-dealing at the artist's expense.  When there was prestige, fame, or credibility to be gained, Salama-Caro held himself out as Indiana's agent, acting on the artist's behalf.  But when there was money to be made, Salama-Caro acted as Morgan's agent rather than Indiana's, or even worse, acted on his own behalf for his own benefit.

210.   Upon information and belief, Morgan gave away or sold Indiana's works to Salama-Caro and various galleries and dealers that he and his family members controlled, including but not limited to Counterclaim Defendant Shearbrook (together, the "Salama-Caro Entities").  For purposes of these transactions, Salama-Caro and the Salama-Caro Entities did not have an arm's-length relationship with Morgan.  Upon information and belief, Morgan and Salama-Caro did not allow other potential buyers to submit competitive bids to Morgan with

respect to such sales. And, since the agreements gave Morgan full discretion to charge any price it wanted for the Indiana works it sold, upon information and belief when Salama-Caro and related entities paid Morgan anything for these works, the amounts paid were less than fair-market value.

211. Upon information and belief, Salama-Caro and the Salama-Caro Entities profited handsomely from this arrangement. After acquiring the works from Morgan, they resold many of them at market value. None of the proceeds from those sales went to Indiana: Under the agreements, Indiana was only entitled to a percentage of the proceeds *Morgan* received from any sales, and not any part of what Salama-Caro or the Salama-Caro Entities received from further sales down the line. In this manner, Salama-Caro and the Salama-Caro Entities diverted to themselves profits that should have been paid to Indiana, in derogation of Salama-Caro's duties of loyalty to Indiana.

212. Salama-Caro and the Salama-Caro Entities also used this arrangement to burnish their reputations in the art market, loaning and donating some of the Indiana works to museums and galleries for exhibition.

213. Morgan and Salama-Caro also purportedly induced Indiana to allow them, through Counterclaim Defendants Shearbrook and RI Catalogue Raisonné, to compile a catalogue of Indiana's works. Upon information and belief, Salama-Caro intended to use that catalogue as a means of authenticating and legitimizing the works Salama-Caro was reselling. In addition, Salama-Caro caused Counterclaim Defendants Shearbrook and Figure 5 Art—which upon information and belief are controlled by Salama-Caro and/or Morgan—to operate the website www.robertindiana.com and display Indiana's works on that site.

214.    The Estate knows very little about Morgan—for example, who owns Morgan, what its business is, and whether it has any assets.  Morgan has refused to tell the Estate who its principals are, even in discovery in the lawsuit Morgan brought.  The Estate does know that Morgan is an offshore shell company organized under the laws of the Bahamas—a tax haven that does not require disclosure of shareholders or principals, making it a popular jurisdiction for persons seeking to hide their wealth from governmental authorities or creditors.

215.    When Morgan initially contracted with Indiana, its name was "Morgan Consolidated Ltd."  Since then, Morgan had added "Foundation" to its name.  Under Bahamian law, foundations need not have any philanthropic purpose, and Morgan does not appear to engage in any philanthropic activities.

216.    On May 18, 2018, Morgan filed a lawsuit against Indiana and others, under the pretense of protecting Indiana's legacy and reputation.  In reality, that lawsuit sought to expand the money-making scheme that Morgan and Salama-Caro had created.  Indiana died the day after Morgan filed suit.

217.    On September 7, 2018 the Estate answered that complaint and filed counterclaims against Morgan, Salama-Caro, and several of their corporate alter-egos.  The Estate alleged in essence that Morgan had exceeded its contractual authority by creating certain sculptures, that Morgan had failed to provide required accountings and make proper payments, and that Salama-Caro was using Indiana's name and trademark without permission and for his own personal gain.  Four days later, Morgan and Salama-Caro responded by filing this action.

218.    Indiana's death on May 19, 2018 terminated all of his agreements with Morgan and Salama-Caro.  On May 10, 2019, the Estate gave written notice to Morgan and Salama-Caro that their various agreements with Indiana had terminated, not only because of Indiana's death

but also because of the many ways that Morgan and Salama-Caro had breached their obligations to Indiana over the years.

219.    The days of Morgan and Salama-Caro profiteering from the artistic talent and legacy of Robert Indiana are over.  By these Counterclaims, the Estate seeks a declaration that the termination of Indiana's various agreements with Morgan and Salama-Caro does not breach those agreements or otherwise subject the Estate to any claims for damages.  The Estate also seeks an injunction barring Morgan and Salama-Caro, and any related persons or entities, from continuing to produce or sell works in Indiana's name.

220.    In addition, the Estate seeks redress for decades of Salama-Caro's breach of his fiduciary duties to Indiana, aided and abetted by Morgan and the other Counterclaim Defendants. The Estate is entitled to recover for the losses that these breaches caused Indiana, as well as the gains that Salama-Caro and the other Counterclaim Defendants received as a result of Salama-Caro's faithless conduct—including all profits from reselling the Indiana works obtained from Morgan.

## FACTS

221.    Robert Indiana was a world-renowned American artist, famous for iconic works such as the LOVE and HOPE word sculptures.  Until his death on May 19, 2018, Indiana lived on the island of Vinalhaven, 15 miles off the coast of Maine.

222.    James W. Brannan was appointed by the Probate Court in Knox County, Maine, to act as personal representative of Indiana's Estate.  Indiana has no living heirs; his testamentary wishes are that his assets should be used to develop a museum dedicated to his life and artworks.

223.    Morgan is a Bahamas limited liability company.  Morgan's owners and principals are not known.  While "Foundation" is part of Morgan's corporate name, Morgan is not a philanthropic organization.

224.    Salama-Caro is an individual residing in New York, New York.

225.    Shearbrook (US) LLC is a New York limited liability company.   Upon information and belief, Shearbrook is at least partly owned and/or controlled by Salama-Caro, members of his family, and/or Morgan.

226.    RI Catalogue Raisonné LLC is a New York limited liability company.   Upon information and belief, RI Catalogue Raisonné is at least partly owned and/or controlled by Salama-Caro, members of his family, and/or Morgan.

227.    Figure 5 Art LLC is a New York limited liability company.   Upon information and belief, Figure 5 Art is at least partly owned and/or controlled by Salama-Caro, members of his family, and/or Morgan.

228.    From the mid-1990s until Indiana's death on May 19, 2018, Salama-Caro acted as Indiana's agent in the art market, and in that role represented Indiana personally.

229.    Upon information and belief, in the 1990s, Salama-Caro identified Indiana as an artist he could potentially exploit for profit-making purposes.   Among other things, Salama-Caro saw that Indiana had achieved global fame—but not financial success—in the 1960s and 1970s with his LOVE design, and was encountering financial difficulties in his later years.   Salama-Caro also saw that Indiana lived in seclusion, and was not represented by any sales agent.

230.    In the 1990s, Salama-Caro traveled to Vinalhaven for several meetings with Indiana.   Taking advantage of Indiana's age, isolation, and financial difficulties, Salama-Caro used these meetings to develop a relationship of trust and influence with Indiana.   Upon information and belief, over the course of those meetings, Salama-Caro persuaded Indiana to sign several agreements that purported to give away Indiana's rights to his life's work without remuneration.

231. Specifically, on or about April 9, 1999, Salama-Caro convinced Indiana to sign a letter agreement, with Morgan as counterparty (the "April 1999 Agreement"). Morgan was an entity unknown to Indiana, and unknown in the art world. The April 1999 Agreement stated that Indiana "transfers and assigns" to Morgan all of his "trademarks, copyrights and all other rights" that he "now has" or might "hereafter acquire" in certain "Images," defined in the April 1999 Agreement to mean the "LOVE, AHAVA (in Hebrew letters), AMOR, Numbers and YALE Images," as well as "any and all paintings, sculptures, constructions and other art work" appearing in certain catalogues.

232. The April 1999 Agreement did not provide Indiana with any compensation for this purported broad transfer of Indiana's rights in his life's work.

233. The April 1999 Agreement also purported to grant Morgan the "exclusive right throughout the world in perpetuity to reproduce, promote and sell the Images in such forms and sizes, singularly or in any combination, in such manner, at such time, for such price and subject to such terms and conditions as [Morgan] in its sole discretion shall determine." If and when Morgan, in its sole discretion, decided to sell a work, Indiana was to receive 50% of the net income "derived from and received by" Morgan, after the deduction of a long list of expenses.

234. Although Salama-Caro was holding himself out at the time to Indiana and to the art world as Indiana's agent, under the April 1999 Agreement Salama-Caro also purported to "act[] on behalf of and as representative for Morgan."

235. The April 1999 Agreement was prepared by Salama-Caro, Morgan, and/or counsel representing them. Indiana was not represented by legal counsel in connection with the April 1999 Agreement and, upon information and belief, Salama-Caro never suggested to Indiana that he should consult an attorney before signing the April 1999 Agreement.

236. Shortly thereafter, Salama-Caro induced Indiana to sign a modification of the April 1999 Agreement (the "Signature Agreement") that purported to grant Morgan the right to "inscribe or set forth my signature and the copyright date on all reproductions of each Image reproduced by Morgan as authorized by the Agreement."

237. The Signature Agreement was prepared by Salama-Caro, Morgan, and/or counsel representing them. Indiana was not represented by legal counsel in connection with the Signature Agreement and, upon information and belief, Salama-Caro never suggested to Indiana that he should consult an attorney before signing the Signature Agreement.

238. On or about December 22, 1999, Salama-Caro persuaded Indiana to execute another letter agreement for Morgan's benefit, this one conveying rights to produce and fabricate certain limited edition sculptures (the "Sculpture Agreement"). The Sculpture Agreement stated that Indiana granted to Morgan "the exclusive right, in perpetuity, to produce and fabricate the LOVE sculptures, the AHAVA sculptures, the AMOR sculptures, the Numbers sculptures (One, Two, Three, Four, Five, Six, Seven, Eight, Nine, Zero) the ART sculptures and the 2000 sculptures (the 'Sculptures') in specified colors, dimensions and edition sizes."

239. As with the April 1999 Agreement, Indiana received no compensation under the Sculpture Agreement for this purported grant of exclusive rights.

240. Instead, the Sculpture Agreement provided that, if and when Morgan, in its sole discretion, decided to sell a sculpture, Morgan would pay Indiana 20% of the receipts received by Morgan from the sale.

241. The Sculpture Agreement was prepared by Salama-Caro, Morgan, and/or counsel representing them. Indiana was not represented by legal counsel in connection with the

Sculpture Agreement and, upon information and belief, Salama-Caro never suggested to Indiana that he should consult an attorney before signing the Sculpture Agreement.

242.     Morgan and Salama-Caro allege that the April 1999 Agreement was amended in 2004 to extend to all paintings and sculptures conceived by Indiana from 1960 to April 2004, the date of the purported amendment (the "Alleged Amendment").  The Estate has not seen a copy of the Alleged Amendment, and Morgan and Salama-Caro have represented that they do not have a copy.  The Estate has no reason to believe that any such Alleged Amendment was ever executed.

243.     Morgan and Salama-Caro have not shown that Indiana received any consideration for purportedly entering into the Alleged Amendment.

244.     Morgan and Salama-Caro allege that the Sculpture Agreement was amended to allow fabrication of marble sculptures (the "Marble Sculpture Agreements").

245.     Morgan and Salama-Caro have not shown that Indiana received any consideration for purportedly entering into the Marble Sculpture Agreements.

246.     The Marble Sculpture Agreements were prepared by Salama-Caro, Morgan, and/or counsel representing them.  Indiana was not represented by legal counsel in connection with the Marble Sculpture Agreements and, upon information and belief, Salama-Caro never suggested to Indiana that he should consult an attorney before signing the Marble Sculpture Agreements.

247.     Indiana did not receive any definite consideration from Salama-Caro or Morgan with respect to the April 1999 Agreement, the Sculpture Agreement, the Marble Sculpture Agreements or any alleged amendments or modifications to those agreements.  Any payments to Indiana under those agreements were indefinite as to time and amount, and were contingent upon

Salama-Caro and Morgan selling the works. Salama-Caro and Morgan had sole discretion over whether, when, and at what price any such sales were made.

248.    The promotion, production, exhibition, authentication, and cataloguing of artwork and the creation and maintenance of a website regarding such artwork are all services that are highly dependent upon the particular skill, knowledge, discretion, and judgment of Salama-Caro.

249.    There are no objective, quantitative metrics in the April 1999 Agreement, the Sculpture Agreement, the Marble Sculpture Agreements, or any alleged amendments or modifications to those agreements, which could measure the success or failure of performance by Morgan or Salama-Caro. Instead, the means and methods of performance under these agreements were delegated to Salama-Caro's discretion, and any measure of the success or failure of those agreements was necessarily subjective.

250.    Salama-Caro persuaded Indiana to sign a letter authorizing Salama-Caro and RI Catalogue Raisonné, to prepare a catalogue raisonné of his works. Indiana received no consideration in exchange. The preparation of a catalogue raisonné is highly dependent upon the particular skill, knowledge, discretion, and judgment of the persons performing the work. There are no objective, quantifiable metrics to measure the success of performance. Instead, the means and methods of performance were delegated to the discretion of Salama-Caro and RI Catalogue Raisonné, and any measure of the success or failure of this performance was necessarily subjective.

251.    Salama-Caro caused Shearbrook and Figure 5 Art to create and operate a website with the URL address www.robertindiana.com, which features images of Indiana's works. Counterclaim Defendants have alleged that Indiana authorized them to use his name and works in connection with the operation of this website. The Estate has not seen any evidence that any

such authorization was ever provided.  The Estate has not seen any evidence that Indiana received any consideration in exchange for this alleged authorization.  Further, the operation of a website promoting an artist's works and legacy is highly dependent upon the particular skill, knowledge, discretion, and judgment of the persons publishing the website.  There are no objective, quantifiable metrics to measure the success of performance; instead, the means and methods of performance were left to the discretion of Salama-Caro, Shearbrook and Figure 5 Art, and any measure of the success or failure of this performance was necessarily subjective.

252.    From approximately 1995 until Indiana's death in May 2018, Salama-Caro held himself out to Indiana and to others as Indiana's exclusive agent in the global art markets.  From at least as early as April 1999, Salama-Caro simultaneously acted as agent for Morgan for purposes of selling Indiana's works.

253.    Through this double-agent role, upon information and belief Salama-Caro arranged that he and the Salama-Caro Entities would obtain works from Morgan pursuant to the April 1999 Agreement, Sculpture Agreement and Marble Sculpture Agreements.   Upon information and belief, in some instances Salama-Caro and the Salama-Caro Entities purchased these works from Morgan at below-market prices; in other instances, they received the works from Morgan for free.  These were not arm's-length transactions.  This arrangement hurt Indiana, because his sole compensation under the April 1999 Agreement, Sculpture Agreement and Marble Sculpture Agreements was a portion of the sales proceeds received *by Morgan*, and not any share in the proceeds from subsequent sales by Salama-Caro or the Salama-Caro Entities to others.  Indiana had no say in Morgan's decision to sell his works to Salama-Caro and the Salama-Caro Entities, or in the prices set by Morgan for those sales, or in Morgan's decision to provide Indiana's works to Salama-Caro and the Salama-Caro Entities for free.

254.    Salama-Caro put himself in a hopelessly conflicted position with respect to the purchase and sale of Indiana's works by simultaneously acting as agent for Indiana, agent for Morgan, and for his own interest and the interest of the Salama-Caro Entities.  Upon information and belief, Salama-Caro did not take reasonable or sufficient steps to ensure that the prices paid to Morgan for purchase of Indiana's works were fair-market prices.

255.    Salama-Caro took advantage of this conflicted relationship for personal financial gain and prestige.  After acquiring Indiana's works from Morgan at below-market prices, upon information and belief Salama-Caro and the Salama-Caro Entities resold the works on the art market for the highest prices they could command.  Upon information and belief, based on the sketchy account statements Indiana received from Morgan over the years, it appears that no portion of the gains from these sales was shared with Indiana.

256.    Salama-Caro breached his duties of good faith and undivided loyalty to Indiana by allowing himself and the Salama-Caro Entities to buy or receive *gratis* Indiana's works from Morgan.  Indiana's interests in getting the highest possible price from the sale of those works directly conflicted with the interests of Salama-Caro and the Salama-Caro Entities in buying the works for the lowest possible price from Morgan.

### FOR A FIRST COUNTERCLAIM
### DECLARATORY JUDGMENT AND INJUNCTION
### Against Morgan and Simon Salama-Caro

257.    The Estate repeats and realleges each allegation above.

258.    Indiana's death terminated the April 1999 Agreement, the Sculpture Agreement, the Marble Sculpture Agreements, the Alleged Amendment, the Signature Agreement, any authorizations from Indiana concerning a catalogue raisonné or website, and any amendments or modifications to any such agreements and authorizations (collectively referred to herein as the "Agreements").

31

259.    The April 1999 Agreement, the Sculpture Agreement and any amendments or modifications to them, including but not limited to the Marble Sculpture Agreements and the Alleged Amendment, are agency and/or consignment agreements that terminated on the death of Indiana.

260.    In addition, all of the Agreements are personal services agreements that terminated on the death of Mr. Indiana.

261.    On May 10, 2019, the Estate gave written notice to Morgan and Salama-Caro, on his own behalf and on behalf of Shearbrook, RI Catalogue Raisonné, Figure 5 Art, and any other Salama-Caro Entities, that the Agreements had been automatically terminated on May 19, 2018, the date of Indiana's death.  The notice further stated that, to the extent any of these Agreements had not been terminated, the Estate was terminating them for several reasons, including the multiple material breaches that had occurred over the years.  A true and accurate copy of the written notice of termination is attached as Exhibit A to these Counterclaims.

262.    The termination of the Agreements does not constitute a breach by the Estate of those Agreements or subject the Estate to any claims for damages.

263.    Due to the termination of the Agreements, Counterclaim Defendants, and any related persons or entities, are prohibited from continuing to reproduce, promote or sell works in Indiana's name, and/or from taking other actions pursuant to contractual authority from Indiana.

264.    A justiciable controversy exists concerning whether these Agreements terminated without any breach of contract by the Estate, and whether the Counterclaim Defendants may continue to reproduce, promote or sell works in Indiana's name, or continue any other activities pursuant to purported authorization by Indiana.

265.    The Court may award declaratory relief under 28 U.S.C. §§ 2201- 2202.

266.    The Court may issue any writ necessary in aid of its jurisdiction under 28 U.S.C. § 1651, the All Writs Act.

267.    The Court is authorized to enter a declaratory judgment where a justiciable controversy exists regardless of whether other relief is available.

268.    The Estate is entitled to a declaratory judgment that the Agreements terminated without any breach of contract by the Estate, and the Counterclaim Defendants may not continue to reproduce, promote or sell works in Indiana's name.

269.    The Estate is further entitled to any injunctive relief necessary and appropriate to enforce such a declaration, including an injunction barring Counterclaim Defendants, and any related persons or entities, from producing, marketing, or selling works in Indiana's name, or taking other actions pursuant to authorization by Indiana.

**FOR A SECOND COUNTERCLAIM**
**BREACH OF FIDUCIARY DUTY**
**Against Salama-Caro**

270.    The Estate repeats and realleges each allegation above.

271.    Beginning in approximately 1995, Salama-Caro acted as Indiana's agent with respect to promotion and sale of Indiana's art, creating a fiduciary relationship between them. The relationship of trust and confidence between Salama-Caro and Indiana continued until Indiana's death on May 19, 2018.

272.    Throughout this relationship, Salama-Caro owed fiduciary duties to Indiana, including duties of good faith and undivided loyalty.

273.    Salama-Caro breached his duties to Indiana in multiple ways, including but not limited to the following:

a.  encouraging Indiana and facilitating Indiana's execution of lopsided agreements (including the Agreements described above) under which Indiana purported to give away valuable rights without due compensation;

b.  encouraging Indiana and facilitating Indiana's execution of those agreements without first obtaining advice from his own counsel;

c.  allowing himself and Salama-Caro Entities to purchase Indiana's works from Morgan, and/or receive such works from Morgan for free, thereby preventing those works from being sold for the highest possible price and depressing the amounts due and payable to Indiana under the Agreements;

d.  reselling some of those Indiana works at market value and retaining the profits for his own benefit and the benefit of the Salama-Caro Entities, without paying any portion of those sales proceeds to Indiana;

e.  donating or loaning some of those Indiana works to museums and galleries for the reputational benefit of himself and the Salama-Caro Entities, without compensation to Indiana;

f.  creating a catalogue raisonné for the purpose of authenticating and legitimizing the works Salama-Caro and Salama-Caro Entities sold to third parties; and

g.  causing Shearbrook and Figure 5 Art to operate a website using Robert Indiana's name and works, without compensation to Indiana.

274.  Salama-Caro's faithless conduct has caused harm to Indiana and the Estate, and has allowed Salama-Caro and the Salama-Caro Entities to profit at the expense of Indiana and the Estate.

275.    The Estate is entitled to recover the full extent of losses caused by Salama-Caro's faithless conduct.

276.    The Estate is also entitled to disgorgement of all profits received by Salama-Caro or the Salama-Caro Entities as a result of Salama-Caro's breaches of duty.

277.    Under the faithless-servant doctrine, the Estate is entitled to disgorgement of all compensation received by Salama-Caro with respect to his work as Indiana's agent, dating from Salama-Caro's first breach of duty to Indiana.

278.    Because Indiana and Salama-Caro had a continuous fiduciary relationship until Indiana's death in May 2018, any statutory limitations period concerning the Estate's claims and remedies for breach of fiduciary duty were tolled until Indiana's death.

## FOR A THIRD COUNTERCLAIM
### AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
**Against Morgan, Shearbrook, RI Catalogue Raisonné, and Figure 5 Art**

279.    The Estate repeats and realleges each allegation above.

280.    As alleged above, Salama-Caro breached fiduciary duties to Indiana.

281.    Morgan, Shearbrook, RI Catalogue Raisonné, and Figure 5 Art had actual knowledge of Salama-Caro's breaches of fiduciary duty to Indiana, including but not limited to the following:

    a.  they knew that Salama-Caro acted as Indiana's agent, and acted as Morgan's agent as well;

    b.  they knew that Salama-Caro encouraged Indiana to enter into lopsided arrangements with Morgan, Shearbrook, and RI Catalogue Raisonné (including but not limited to the Agreements) without first being advised by counsel;

c.  they knew that, pursuant to the Agreements, Morgan produced works using Indiana's images and then transferred those works to Salama-Caro and Salama-Caro Entities for no compensation or at below-market terms;

d.  they knew that the only compensation to Indiana under the Agreements would be a percentage of sales proceeds received by Morgan;

e.  they knew that Salama-Caro, Shearbrook, and other Salama-Caro Entities were reselling the Indiana works obtained from Morgan, at market prices, without remitting any part of those sales proceeds to Indiana;

f.  they knew that Salama-Caro, Shearbrook, and other Salama-Caro Entities were donating or loaning some of the Indiana works obtained from Morgan to museums and galleries, thereby benefiting their own reputations in the art market, without compensation to Indiana;

g.  they knew that Salama-Caro caused RI Catalogue Raisonné to create and/or take substantial steps towards creating a catalogue raisonné of Indiana's works for the purpose of authenticating and legitimizing works Salama-Caro and Salama-Caro Entities were selling to third parties; and

h.  they knew that Salama-Caro caused Shearbrook and Figure 5 Art to operate a website using Robert Indiana's name and works, without compensation to Indiana.

282.  With such knowledge, Morgan, Shearbrook and RI Catalogue Raisonné induced and/or substantially participated in Salama-Caro's breaches of fiduciary duty to Indiana in numerous ways, including but not limited to the following:

a. They provided Salama-Caro with monetary and non-monetary benefits for his role in causing Indiana to enter into lopsided arrangements (including the Agreements) which directly benefited Morgan, Shearbrook and RI Catalogue Raisonné at Indiana's expense;

b. Morgan sold works to Salama-Caro and Salama-Caro Entities (including Shearbrook) at below-market prices, thereby leading to reduced payments due to Indiana under the Agreements, and allowing Salama-Caro, Shearbrook and other Salama-Caro Entities to profit at Indiana's expense by reselling those works at market prices without remitting any part of the sales proceeds to Indiana;

c. Morgan gifted works to Salama-Caro and Salama-Caro Entities (including Shearbrook), an arrangement which meant that no payment would be made to Indiana under the Agreements;

d. RI Catalogue Raisonné created and/or took substantial steps towards creating a catalogue raisonné of Indiana's works for the purpose of authenticating and legitimizing works Salama-Caro and Salama-Caro Entities were selling to third parties; and

e. With Salama-Caro's assistance, Shearbrook and Figure 5 Art operated a website using Robert Indiana's name and works, benefiting themselves and the other Counterclaim Defendants without compensation to Indiana.

283. Upon information and belief, there is a unity of ownership, control and interests among Morgan, Salama-Caro, Shearbrook, RI Catalogue Raisonné, Figure 5 Art, and other Salama-Caro Entities, such that Morgan, Shearbrook, RI Catalogue Raisonné, and Figure 5 Art were incentivized to assist Salama-Caro's breach of fiduciary duties to Indiana.

284.     By aiding and abetting Salama-Caro's breaches of duty, Morgan, Shearbrook, RI Catalogue Raisonné, and Figure 5 Art have caused harm to Indiana and the Estate.  Further, aiding and abetting these breaches has allowed Morgan, Shearbrook, RI Catalogue Raisonné, and Figure 5 Art to profit at the expense of Indiana and the Estate.

285.     The Estate is entitled to recover the full extent of losses it has suffered as a result of Morgan, Shearbrook, RI Catalogue Raisonné, and Figure 5 Art aiding and abetting Salama-Caro's breaches of duty to Indiana.

286.     The Estate is entitled to disgorgement of all profits received by Morgan, Shearbrook, RI Catalogue Raisonné, and Figure 5 Art as a result of their aiding and abetting of Salama-Caro's breaches of duty.

287.     Because Indiana and Salama-Caro had a continuous fiduciary relationship until Indiana's death in May 2018, any statutory limitations period concerning the Estate's claims and remedies for aiding and abetting breach of fiduciary duty were tolled until Indiana's death.

### FOR A FOURTH COUNTERCLAIM
### ALTER EGO/PIERCING THE CORPORATE VEIL
**Against All Defendants**

288.     The Estate repeats and realleges each allegation above.

289.     Salama-Caro and/or persons unknown to the Estate have operated Morgan, Shearbrook, RI Catalogue Raisonné, and Figure 5 Art in a manner that disregards the corporate separateness of each entity, and has confused and harmed Indiana and the Estate, such that it would work injustice unless each of them is held responsible for the liabilities of the others to the Estate.

290.     Upon information and belief, Morgan, Shearbrook, RI Catalogue Raisonné and Figure 5 Art are completely controlled by Salama-Caro and/or persons unknown to the Estate,

who did not treat Morgan, Shearbrook, RI Catalogue Raisonné and Figure 5 Art as separate business entities.

291.    Upon information and belief, Salama-Caro and/or persons unknown to the Estate used their complete control over Morgan, Shearbrook, RI Catalogue Raisonné and Figure 5 Art in order to carry out their schemes to take advantage of Indiana, as alleged above.

292.    Accordingly, all damages and remedies recoverable from any Counterclaim Defendant should be recoverable against the remaining Counterclaim Defendants.

### FOR A FIFTH COUNTERCLAIM
### EQUITABLE ACCOUNTING
### Against Morgan and Salama-Caro

293.    The Estate repeats and realleges each allegation above.

294.    Salama-Caro had a fiduciary and trust-based relationship with Indiana.

295.    Morgan took advantage of Salama-Caro's fiduciary and trust-based relationship with Indiana, and aided and abetted Salama-Caro's breaches of fiduciary duty to Indiana.

296.    The Estate is entitled to an equitable accounting from Salama-Caro and Morgan with respect to all money and property transferred to or from Morgan, Salama-Caro or the Salama-Caro Entities in connection with all their purchases, sales or transfers of works produced pursuant to the Agreements.

## PRAYER FOR RELIEF

WHEREFORE, the Estate respectfully prays that the Court:

A.      Enter judgment declaring that the Agreements have been lawfully terminated, without any liability to the Estate;

B.      Enjoin Counterclaim Defendants from producing any works based on Indiana's images or taking any other action that is inconsistent with the Agreements' termination;

C.      Award damages against all Counterclaim Defendants in an amount to be determined at trial;

D.      Order all Counterclaim Defendants to disgorge to the Estate all profits received by each of them with respect to Salama-Caro's breaches of fiduciary duties to Indiana;

E.      Order Salama-Caro to disgorge to the Estate all compensation received with respect to his role as Indiana's agent, dating from the time of his first breach of duty to Indiana, under the faithless-servant doctrine;

F.      Order each Counterclaim Defendant to be jointly responsible for all amounts owed by any other Counterclaim Defendant, pursuant to the alter ego/piercing the corporate veil doctrines;

G.      Order Morgan and Salama-Caro to provide the Estate with an equitable accounting regarding all money and property transferred to or from any of them (or any entities under their control) in connection with all their purchases, sales or transfers of works produced pursuant to the Agreements;

H.      Award the Estate punitive damages;

I.      Award the Estate reasonable costs and attorneys' fees incurred in having to defend against this action, pursuant to 17 U.S.C. § 505; and

J.       Grant the Estate such other and further relief as the Court deems just and proper.

Dated: New York, New York
       May 10, 2019

VENABLE LLP

By: /s/  Jessie F. Beeber
     Edward P. Boyle
     Jessie F. Beeber
     Kan M. Nawaday
     John C. Vazquez
1270 Avenue of the Americas
New York, New York 10020
(212) 307-5500
epboyle@venable.com
jbeeber@venable.com
kmnawaday@venable.com
jcvazquez@venable.com

*Attorneys for James W. Brannan as Personal
Representative of the Estate of Robert Indiana*